913 So.2d 714 (2005)
TURBOMECA, S.A., Appellant,
v.
FRENCH AIRCRAFT AGENCY, INC., etc., Appellee.
Nos. 3D05-276, 3D04-1636, 3D04-1270.
District Court of Appeal of Florida, Third District.
October 26, 2005.
*715 Anania, Bandklayder, Blackwell, Baumgarten, Torricella & Stein, and Francis A. Anania, and Daniel L. Bandklayder, and Douglas H. Stein, Miami, for appellant.
Tew Cardenas, LLP, and William G. Burd, and John S. McPhee, Miami, for appellee.
Before GERSTEN, GREEN, and FLETCHER, JJ.
GREEN, J.
On this consolidated appeal, Turbomeca, S.A., defendant below, appeals an order denying its motion to vacate an arbitration award in favor of French Aircraft Agency, Inc. ("French Aircraft"). A final judgment was entered pursuant to an arbitration award, and a subsequent cost judgment was entered in French Aircraft's favor. For the reasons that follow, we affirm in part and reverse in part.
French Aircraft owned a helicopter manufactured by Aerospatiale Helicopter Corporation and powered by an engine manufactured by Turbomeca. The helicopter's original owner installed a "fuel flow limiter," also manufactured by Turbomeca, on the engine. The limiter was designed to protect the engine from potential "over temperature" failure during high altitude/high power demand operations.
On January 31, 1991, this helicopter crashed shortly after take-off. The pilot, Jacques Pierard, and two passengers, Combiz Shafa and Harold Lee, all survived but sustained personal injuries. The helicopter itself, however, was a total loss. Six days before the crash, the helicopter was inspected by Carl Abbott, certified airframe and power plant mechanic. Abbott's inspection revealed no mechanical problems. However, during the inspection, Abbot removed and improperly reinstalled the helicopter's airframe fuel filter upside down.
Pierard, Shafa and Lee filed lawsuits against 1) French Aircraft, the owner; 2) Aerospatiale, the manufacturer; 3) Abbott, the inspector; and 4) Turbomeca, the engine manufacturer. French Aircraft filed a third party action for contribution against Turbomeca, alleging that the cause of the accident was a defect in the engine's "fuel flow limiter."
Thereafter, French Aircraft settled Shafa's claim for $2.7 million. Shafa executed a general release of all claims against French Aircraft and Turbomeca. French Aircraft also settled with Lee; however, Lee did not release Turbomeca. Further, French Aircraft received $285,000 from its insurer for damages to the helicopter and its engine in the crash.
While these claims were pending, Turbomeca and French Aircraft entered into an agreement to sever and defer the third party action pending the outcome of the Pierard/Lee litigation. The agreement provided, among other things, that: 1) the parties would not introduce any evidence of the other's liability in the Pierard/Lee trial; 2) the verdict in the Pierard/Lee trial would not reflect the proper apportionment of liability between them; 3) they would not raise res judicata or any other avoidance defense in the deferred third party action; and 4) the parties were not precluded from asserting and proving the pilot or the manufacturer's liability.
*716 Pierard's case proceeded to trial against French Aircraft. Turbomeca was granted summary judgment in this main action; it did not therefore participate in this trial. French Aircraft successfully defended the suit asserting that the cause of the accident was the inspector's inverted installation of the airframe filter and pilot error. The jury returned a defense verdict absolving French Aircraft of all liability.
After that trial, French Aircraft's third party contribution claim against Turbomeca was mediated. During mediation, the parties agreed to arbitrate the case but stipulated that the arbitration would be subject to review with respect to all issues of law. At arbitration, French Aircraft sought contribution from Turbomeca for: the $2.7 million Shafa settlement passenger; $285,000 in property damage for loss of the helicopter; and interest. The arbitration panel concluded that the pilot was 75% at fault for the accident and Turbomeca was 25% at fault. It awarded French Aircraft $746,250 in damages and $847,204 in interest. The panel did not award arbitration costs.
Turbomeca moved to vacate the arbitration award. The trial court denied the motion. The trial court then confirmed the arbitration award and entered final judgment, but retained jurisdiction for the purpose of entering additional orders, including "orders related to the taxation of costs." A hearing was conducted on French Aircraft's amended motion to tax costs and the trial court entered a cost judgment awarding French Aircraft $54,000 in costs incurred during the arbitration proceeding. Turbomeca timely appealed the orders.
Although Turbomeca raises several issues as to the final judgment, we address only two based upon our conclusion that the remainder lack merit. Turbomeca argues, and we agree, that the award for damages for the loss of the helicopter is barred by the economic loss rule. This case is controlled by the holding in Indemnity Ins. Co. v. American Aviation, Inc., 891 So.2d 532, 542 (Fla.2004), that "a manufacturer or distributor in a commercial relationship has no duty beyond that arising from its contract to prevent a product from malfunctioning or damaging itself." In this case, French Aircraft has suffered a purely economic loss due to what it alleges is a defective product. It cannot recover for this loss under tort theories. "[A] manufacturer in a commercial relationship has no duty under either negligence or strict product-liability to prevent a product from injuring itself." Id. at 540 (citing E. River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 871, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986)).
Contrary to French Aircraft's assertions, it cannot avoid the economic loss rule, as a matter of law, because French Aircraft has suffered no personal injury or damage to other property. Although the pilot and the two passengers were injured, French Aircraft has no claim against Turbomeca for any physical injuries to itself. See Fla. Power & Light Co. v. Westinghouse Elec. Corp., 510 So.2d 899, 900 (Fla.1987) (manufacturer of goods cannot be held liable where plaintiff not injured by defect in goods). Physical injury to third parties is insufficient to satisfy this economic loss rule exception. French Aircraft does not stand in any relation to the injured parties to be able to assert their injuries to satisfy this requirement; the pilot and the passengers asserted their own claims for personal injuries. See Airport Rent-A-Car Inc. v. Prevost Car, Inc., 660 So.2d 628, 632 (Fla.1995) (where purchaser has no claim for personal injury there can be no independent tort for economic *717 loss) (citing AFM Corp. v. So. Bell Tel. & Tel. Co., 515 So.2d 180 (Fla.1987)).
In addition, no other property was harmed. The airframe and engine are not two separate pieces of property  they are one product. Courts have refused to bifurcate products into parts where a component part harms or destroys the finished product. Casa Clara Condo. Ass'n v. Charley Toppino & Sons, Inc., 620 So.2d 1244 (Fla.1993) (economic loss rule bars claim against concrete provider for building where there was no damage to anything other than building itself).[1] In an analogous case, one court has held that a "helicopter and engine, along with the fitting, constitute a single product for purposes of the economic loss doctrine." Va. Sur. Co. v. Am. Eurocopter Corp., 955 F.Supp. 1213, 1216 (D.Haw.1996).[2] "[S]ince all but the very simplest machines have component parts, [a contrary] holding would require a finding of `property damage' in virtually every case where a product damages itself." East River Steamship Corp., 476 U.S. at 867, 106 S.Ct. 2295 (quoting No. Power & Eng'g Corp. v. Caterpillar Tractor Co., 623 P.2d 324, 330 (Alaska 1981)). This case doesn't present any facts that would persuade us to depart from these well-reasoned precedents. We therefore reverse and vacate that portion of the final judgment that awards damages for the loss of the helicopter. In all other respects, we affirm the final judgment.
As to the costs judgment, Turbomeca asserts that trial court erred as a matter of law in awarding arbitration costs to French Aircraft where neither the parties' stipulation nor the arbitration award provided for a costs award. We agree.
Pursuant to section 682.11, Florida Statutes (2002), the trial court was not authorized to award costs. That section provides that expenses incurred in conducting an arbitration proceeding shall be paid as provided in the arbitration award. Courts have interpreted this provision as depriving courts of jurisdiction to award these costs to parties when they are not awarded in arbitration. Zac Smith & Co. v. Moonspinner Condo. Ass'n, Inc., 534 So.2d 739, 741 (Fla. 1st DCA 1988) ("costs related to an arbitration are to be awarded, if at all, by an arbitration panel and not by a court"); McDaniel v. Berhalter, 405 So.2d 1027 (Fla. 4th DCA 1981) (trial court improperly added costs of the arbitration to the arbitrator's award). See Rock v. Prairie Bldg. Solutions, Inc., 854 So.2d 722 (Fla. 2d DCA 2003) (court properly refused to modify arbitrator's award as to costs). As the arbitration award did not include costs, the court should not have awarded same.
Based on the foregoing, we conclude as a matter of law that the economic loss rule bars French Aircraft's recovery for the *718 loss of the helicopter under a negligence theory. Additionally, the cost judgment is reversed.
Remaining points lack merit.
Affirmed in part, reversed in part.
NOTES
[1] See also, Jarmco, Inc. v. Polygard, Inc., 668 So.2d 300 (Fla. 4th DCA 1996) (economic loss rule bars claim against distributor of boat resin where only damage was to boat itself); Am. Universal Ins. Group v. Gen. Motors Corp., 578 So.2d 451 (Fla. 1st DCA 1991) (economic loss rule bars claim for loss of engine when damage caused by replacement oil pump that was integral component of engine).
[2] See Am. Eagle Ins. Co. v. United Tech. Corp., 48 F.3d 142 (5th Cir.1995) (aircraft hull damaged by defective engine not "other property"); Midwest Helicopters Airways, Inc. v. Sikorsky Aircraft, 849 F.Supp. 666 (E.D.Wis.1994) (helicopter tail rotor drive is component of helicopter and not "other property"); Trans States Airlines v. Pratt & Whitney Canada, Inc., 177 Ill.2d 21, 224 Ill.Dec. 484, 682 N.E.2d 45 (1997) (no evidence parties bargained for separate components  airplane hull not separate property from engine); Nat'l Union Fire Ins. Co. v. Pratt & Whitney Canada, Inc., 107 Nev. 535, 815 P.2d 601 (1991) (economic loss rule bars recovery for loss of aircraft that harmed itself).