**William Jerome HOLLIDAY and Kay Roberta Holliday, husband and wife, Plaintiffs,**

**v.**

**BELL HELICOPTERS TEXTRON, INC., a Delaware corporation; Beloat's Aircraft Trim, Inc., a Texas corporation; Allison Gas Turbine Division, a division of General Motors Corp., a Delaware corporation; Standard Aero, Inc., a Delaware corporation; John Does 1–X; and Black Corporations 1–X, Defendants.**

Civ. No. 88–00904.

United States District Court, D. Hawaii.

Oct. 12, 1990.

James F. Ventura, Libkuman Ventura Ayabe Chong & Nishimoto, Honolulu, Hawaii, Thomas L. Toone, Beer & Toone, P.C., Phoenix, Ariz., for plaintiffs.

Burnham H. Greeley, James H. Hershey, Greeley Walker & Kowen, Honolulu, Hawaii, for Bell Helicopter.

Wesley W. Ichida, Lyle M. Ishida, Case & Lynch, Honolulu, Hawaii, for Beloat Aircraft.

John R. Lacy, Goodsill Anderson Quinn & Stifel, Honolulu, Hawaii, for Standard Aero.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BELL HELICOPTER'S MOTION FOR PARTIAL SUMMARY JUDGMENT

DAVID A. EZRA, District Judge.

Defendant Bell Helicopters Textron, Inc.'s motion for partial summary judg-ment as to Counts I (crashworthiness) and III (breach of warranty) of plaintiffs' complaint came on for hearing before this court on October 9, 1990. James H. Hershey, Esq. and Burnham H. Greeley, Esq. appeared for defendant Bell Helicopters Textron, Inc. ("Bell"). Bryan C. Yee, Esq. appeared for defendant Standard Aero, Inc. James F. Ventura, Esq. appeared for plaintiffs William J. and Kay R. Holliday ("plaintiffs"). Defendants Beloat's Aircraft Trim, Inc. and Allison Gas Turbine Division did not appear.

The court having reviewed the motion and the memoranda in support thereof and in opposition thereto, having heard oral arguments of counsel, and being fully advised as to the premises herein, GRANTS defendant Bell's motion for partial summary judgment on plaintiffs' breach of warranty claims (Count III) and DENIES its motion for partial summary judgment on plaintiffs' crashworthiness claims (Count I). Bell has withdrawn its motion for partial summary judgment on the issue whether comparative fault principles apply.

## BACKGROUND

This products liability action arises from the crash on June 7, 1986 of a helicopter piloted by plaintiff William Holliday and manufactured by defendant Bell. Plaintiffs sustained injuries when the helicopter lost power shortly after takeoff and plunged 50–100 feet to the ground.

Plaintiffs allege the helicopter, which was thirteen years old at the time of the crash and had been resold at least seven times, was defectively designed and manufactured. Specifically, plaintiffs claim the engine was manufactured improperly, causing a breach of the implied warranty of merchantability. They also assert the pilot's seat and seatbelt were designed defectively, enhancing their injuries and giving rise to a crashworthiness claim.

## DISCUSSION

1. *Jurisdiction and Applicable Law*

This is a diversity action over which this court has jurisdiction pursuant

to 28 U.S.C. § 1332. In diversity actions, this court applies state substantive law. *Stoddard v. Stoddard*, 641 F.2d 812 (9th Cir.1981). However, whether a federal statute preempts state law is a question of federal law. *Local Union 598, Plumbers & Pipefitters v. J.A. Jones Constr. Co.*, 846 F.2d 1213, 1218 (9th Cir.1988), *aff'd*, 488 U.S. 881, 109 S.Ct. 210, 102 L.Ed.2d 202 (1988).

### 2. *Count III—Breach of Warranty*

■ Warranty claims under state law are governed by a four year statute of limitations set out at Hawaii Rev.Stat. § 490:2–725(1), which covers breaches of contracts for sale. *See Schulz v. Honsador, Inc.*, 67 Haw. 433, 436, 690 P.2d 279 (1984) (breach of warranty constitutes a breach of contract). The statute begins to run when a cause of action accrues:

> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty *explicitly* extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Hawaii Rev.Stat. § 490:2–725(2) (emphasis added). By its terms, the exception for future performance does not apply to implied warranty claims.

Plaintiffs agree they have no express warranty claim. *See* Plaintiffs' Memorandum in Opposition at 2, 6. Their only response to the request for summary judgment on the implied warranty claim is to argue that H.R.S. § 490:2–725(2) is "clearly not the law with regard to an implied warranty of merchandability [sic]." Plaintiffs cite only one case, *Ontai v. Straub Clinic and Hospital, Inc.*, 66 Haw. 237, 659 P.2d 734 (1983), which is not on point. *Ontai* discusses generally breaches of implied warranty in design defect cases, but does not address the applicable statute of limitations or even mention H.R.S. § 490:2–725(2).

This court has found no authority for the proposition that H.R.S. § 490:2–725(2) does not apply to breach of an implied warranty of merchantability. The parties do not dispute that Bell tendered delivery of the helicopter in April 1973. Therefore, the statute of limitations expired in April 1977. Plaintiffs did not file their complaint until 1988. Any claims for breach of warranty, express or implied, are therefore barred by the statute of limitations.

### 3. *Count I—Crashworthiness*

Bell argues plaintiffs' crashworthiness claim is impliedly preempted by the Federal Aviation Act ("FAA"), 49 U.S.C.App. § 1301 *et seq.*, and the pervasive regulatory scheme promulgated under it. Alternatively, Bell asserts the claim is preempted because it is based on state law that conflicts with federal regulations. Bell does not argue express preemption.

### A. Implied Preemption

■ Where Congress has not enacted an explicit preemption clause, state law may still be displaced if an intent to preempt is " 'implicitly contained in [the federal statute's] structure and purpose.' " *San Diego Unified Port Dist. v. Gianturco*, 651 F.2d 1306, 1310 (9th Cir.1981) (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977)), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982). In order to show the FAA impliedly preempts plaintiffs' state law design defect claims, Bell must show that Congress intended the FAA to occupy the specific field of products liability. *See West v. Northwest Airlines*, No. 89–35820, slip op. 10989, 10996 (9th Cir. Sept. 11, 1990). Section 1506 of the FAA is a savings clause, which specifically precludes a finding of such Congressional intent. *See id.;* 49 U.S.C.App. § 1506 (App.1982). Section 1506 provides:

> Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

There is no general, implied private right of action for injuries arising out of violation of the FAA's safety provisions. *In re Mexico City Aircrash of October 31, 1979,* 708 F.2d 400, 408 (9th Cir.1983). Accordingly, section 1506 preserves those state common law and statutory causes of action without which many injured plaintiffs would receive no redress at all. Section 1506 "recognizes that the statutory scheme established by the Federal Aviation Act is designed merely to complement existing statutory and common law remedies, not to supplant them." *Brunwasser v. Trans World Airlines, Inc.,* 541 F.Supp. 1338, 1345 (W.D.Pa.1982).

For example, the FAA does not preempt a common law claim for intentional infliction of emotional distress. *Hingson v. Pacific Southwest Airlines,* 743 F.2d 1408, 1416 (9th Cir.1984). Nor does it preempt a state statutory claim for unfair trade practices and consumer protection violations. *Brunwasser,* 541 F.Supp. at 1346. Moreover, several courts have allowed crashworthiness claims against an aircraft manufacturer where the plaintiff alleged that a defective seatbelt enhanced his injuries, although these courts did not address FAA preemption specifically. *See, e.g., Meil v. Piper Aircraft Corp.,* 658 F.2d 787 (10th Cir.1981); *Trust Corp. of Montana v. Piper Aircraft Corp.,* 506 F.Supp. 1093 (D.Mont.1981).

Bell contends the federal regulation of aircraft design, maintenance, and operation is so comprehensive and the federal interest so dominant as to impliedly preempt plaintiffs' design defect claim. In support of its position, Bell refers the court to regulations addressing specifically the design of aircraft seats and safety belts. *See* 14 C.F.R. §§ 27.1413, 27.785, 27.1307, 27.-1301, and 27.561 (1973).[1] It claims these regulations provide the exclusive standard for measuring design defects and that plaintiffs' crashworthiness claim is an improper attempt to encroach upon that standard. Bell makes the slippery slope argument that if this court allows plaintiffs'

claim to proceed, it will render federal regulations meaningless and invite "partisan experts retained for litigation" to dictate aviation standards. *See* Defendant's Memorandum in Support at 13.

The parties have not cited, nor has this court discovered, any case directly deciding whether the FAA preempts a state tort claim based on a products liability theory against an aircraft manufacturer that has met minimum FAA safety standards. However, the Ninth Circuit and several other courts have found the FAA does not preempt state tort claims based on other theories. This court finds those cases instructive.

The Ninth Circuit found the FAA did not preempt a state law claim for negligent infliction of emotional distress in *Hingson,* 743 F.2d at 1416. Similarly, the Fifth Circuit concluded the FAA did not preempt state bailment law as it relates to the liability of an airplane owner for the negligent acts of a pilot, and it allowed a wrongful death action to proceed. *Rogers v. Ray Gardner Flying Serv., Inc.,* 435 F.2d 1389, 1394 (5th Cir.1970), *cert. denied,* 401 U.S. 1010, 91 S.Ct. 1255, 28 L.Ed.2d 546 (1971). Several other courts have also considered whether the FAA preempts state tort law remedies and found that it does not. *See e.g., McEntire v. Estate of Forte,* 463 S.W.2d 491, 494 (Tex.Civ.App.1971) (finding that nothing in the FAA's regulatory scheme indicates an intent to preempt the traditional function of state law with respect to tort liability); *see also Bieneman v. City of Chicago,* 864 F.2d 463, 471 (7th Cir.1988) (recognizing that state courts award damages every day in air crash cases), *cert. denied,* —— U.S. ——, 109 S.Ct. 2099, 104 L.Ed.2d 661 (1989).

In the absence of specific, controlling authority, defendant asks this court to analogize to cases holding that the National Traffic and Motor Vehicle Safety Act, 15 U.S.C. § 1381 *et seq.,* preempts crashworthiness claims against car manufacturers for failure to provide an airbag as standard equipment. *See* Defendant's Memorandum

---

**1.** Plaintiffs do not contest that the seat and seatbelt in question complied with these regula-

tions, and they do not claim the original airworthiness certificate was issued improperly.

**1400**

at 12–13. For the following reasons, this court finds defendant's argument unpersuasive.

First, the Motor Vehicle Safety Act contains an explicit preemption clause.[2] Except with respect to laws relating to rates, routes, or services of air carriers, *see* 49 U.S.C.App. § 1305(a) (1984), the FAA contains no such clause and does not expressly preempt state damages remedies.[3] *Bieneman*, 864 F.2d at 471. In the absence of an explicit preemption clause, a manufacturer's compliance with federal regulations does not eliminate conclusively its liability for the design of defective products. *Elliott v. Brunswick Corp.*, 903 F.2d 1505, 1508 (11th Cir.1990); *accord In re Air Crash Disaster at Stapleton Int'l Airport*, 721 F.Supp. 1185, 1188 (D.Colo.1988) (compliance with FAA regulations does not establish as a matter of law that a party is not liable for traditional tort law remedies).

Second, the Safety Act gave car manufacturers the option of installing either manual seatbelts or passive restraints, i.e., airbags. *See* 15 U.S.C. § 1410b (1982). The Eleventh Circuit held recently that the Safety Act impliedly preempted a state products liability action because it would effectively prohibit the exercise of this federally granted option. *Taylor*, 875 F.2d at 827. Here, there is no federally granted option, compliance with which insulates a manufacturer from liability. In any event, the question whether a particular federal law preempts state activity is not controlled by reference to a standard of preemption developed in reference to a different federal law. *Hoopa Valley Tribe v.*

*Nevins*, 881 F.2d 657, 659 (9th Cir.1989) (citing *Cotton Petroleum Corp. v. New Mexico*, 490 U.S. 163, 109 S.Ct. 1698, 1707, 104 L.Ed.2d 209 (1989)), *cert. denied*, —— U.S. ——, 110 S.Ct. 1523, 108 L.Ed.2d 763 (1990).

Therefore, in light of the clear language of section 1506 and the absence of a relevant preemption clause in the FAA, this court concludes that plaintiffs' crashworthiness claim is not impliedly preempted.

**B. Conflict Preemption**

■ Even where Congress has not occupied the field, state law may nevertheless be preempted to the extent it actually conflicts with federal law; that is, when compliance with both state and federal law is impossible. *West*, slip op. at 10993. The test for determining if a conflict exists is whether the challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Lockheed Air Terminal, Inc. v. City of Burbank*, 457 F.2d 667, 675 (9th Cir.1972) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)), *aff'd*, 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973).

■ In this case, the federal law at issue does no more than set forth "[s]uch *minimum* standards governing the design, materials, workmanship, construction, and performance of aircraft ... as may be required in the interest of safety." 49 U.S.C. App. § 1421(a)(1) (emphasis added); *see also Garbarino v. United States*, 666 F.2d 1061, 1065 (6th Cir.1981) ("[t]he statute re-

---

2. 15 U.S.C. § 1392(d) (1982) provides that whenever a federal motor vehicle safety standard is in effect, no state may establish a standard that is not *identical* to the federal one. Although the Safety Act also contains a savings clause similar to section 1506 of the FAA, *see* 15 U.S.C. § 1397(k) (1988), that clause must be read in conjunction with the preemption provision. *See Taylor v. General Motors Corp.*, 875 F.2d 816, 823–25 (11th Cir.1989). Section 1397(k) provides that "[c]ompliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law."

Moreover, the preemption clause of section 1392(d) expressly exempts those state laws re-

quiring a *higher standard of performance* than that required by the federal law. Although the exemption applies only to vehicles procured by the state for its own use, the existence of the exemption nevertheless provides support for plaintiffs' next argument, i.e., that a *higher* standard is not necessarily a *conflicting* standard subject to preemption.

3. In light of Congress' clear willingness, as evidenced by section 1305(a), to enact a preemption clause where it is so inclined, the mere absence of a preemption clause specifically addressing state damage remedies lends support to this court's conclusion that the FAA does not preempt plaintiffs' action.

quires only that the Administrator prescribe such minimum standards as may be required in the interests of safety"). Conflict preemption applies only where compliance with state law would prevent the defendant from following federal regulations. *See West,* slip op. at 10997. In conflict preemption analysis, "[t]he crucial inquiry is not whether state law reaches matters also subject to federal regulation, but whether the two laws function harmoniously rather than discordantly." *Morseburg v. Balyon,* 621 F.2d 972, 978 (9th Cir.1980), *cert. denied,* 449 U.S. 983, 101 S.Ct. 399, 66 L.Ed.2d 245 (1980).

Defendant asserts the practical effect of plaintiffs' crashworthiness claim, if allowed, will be to override a federally issued certificate of airworthiness and nullify helicopter safety regulations. *See* Defendant's Memorandum at 14. Further, defendant claims that through the use of experts, successive plaintiffs will set conflicting safety standards and place an impossible burden on manufacturers. *See* Defendant's Reply Memorandum at 5.

Plaintiffs counter that if this court finds their claims preempted, it will have immunized from crashworthiness suits all aircraft manufacturers in possession of an airworthiness certificate. *See* Plaintiffs' Memorandum at 5. They allege that despite having met the FAA's minimum standards, the helicopter's seat and seatbelt design enhanced their injuries.

█ This court agrees that aircraft manufacturers should not be insulated from liability for a defectively designed product by their compliance with certain minimum standards. *See Elliott,* 903 F.2d at 1508. Experience has shown that defects in design and manufacture of an aircraft may not become evident until after an aircraft has been in operation for some time, i.e., after a crash and the resulting investigation into its cause. There is no just or logical reason why those injured by such a defective aircraft should be barred from seeking recovery for their damages simply because the Federal Aviation Administration overlooked or was unaware of the defective condition at the time the aircraft was certified. Indeed, such an interpretation of the law could encourage aircraft manufacturers to cut corners in order to obtain an airworthiness certificate at the earliest possible date, without sufficient consideration of potential design problems, since once the airworthiness certificate is issued, the manufacturer is, under defendant's view of the law, effectively immunized from all liability under state tort law.

Further, nothing in the FAA indicates that states may not require aircraft to be *more* safe or *better* designed. In addition, compliance with more stringent safety standards established by state products liability law would not prevent defendant from complying with federal regulations that set lower standards. Accordingly, this court finds the state and federal laws are harmonious rather than discordant and concludes plaintiffs' crashworthiness claim is not preempted by conflict doctrines.

## CONCLUSION

Accordingly, the court GRANTS defendant's motion for partial summary judgment on plaintiffs' breach of warranty claims, finding that all such claims are barred by the statute of limitations. The court DENIES defendant's motion for partial summary judgment on plaintiffs' crashworthiness claims, finding they are not preempted by the FAA. The court notes that defendant's motion for partial summary judgment on the issue whether comparative fault principles apply was withdrawn without contest at the hearing.

IT IS SO ORDERED.