Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000704
26-NOV-2021
07:58 AM
Dkt. 77 MO

NO. CAAP-17-0000704

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

ROBERT KELSHAW GREENWELL and LOU ELLEN LAMBERT,
Plaintiffs-Appellants,
v.
PALANI RANCH COMPANY, INC.; HSA-UWC, a Hawai'i corporation,
GUY C. MIRANDA; JERRAE A. MIRANDA; CAROL ADAMSON GREENWELL,
Successor Trustee of the F.R. Peter Greenwell Trust, dated
October 23, 1989, as amended;
CAROL ADAMSON GREENWELL, Trustee of the Carol Adamson
Greenwell Trust, dated October 23, 1989, as amended,
Defendants-Appellees,
and
DOE DEFENDANTS 1-20, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 13-1-636K)

MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Wadsworth and McCullen, JJ.)

Plaintiffs-Appellants Robert Kelshaw Greenwell (**Kelly**)
and Lou Ellen Lambert (collectively, **Appellants**) appeal from the
Final Judgment entered on September 11, 2017, by the Circuit
Court of the Third Circuit (**Circuit Court**) in favor of
Defendants-Appellees Frank Russell Greenwell (**Peter**)[1] and Carol

---

[1] Defendant-Appellee Frank Russell Greenwell, also known as F.R. Peter Greenwell, also known as Frank Russell Peter Greenwell, is deceased. Pursuant to Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 43, this court issued an order on April 13, 2018, wherein Carol Adamson Greenwell, Successor Trustee of the F.R. Peter Greenwell Trust, dated October 23, 1989, as amended, was substituted for Frank Greenwell, Trustee of the F.R. Peter Greenwell Trust, dated October 23, 1989, as amended.

Adamson Greenwell (collectively, **Appellees**).[2]  In the appeal,
Appellants challenge the Circuit Court's (1) "Order Granting
Defendants Frank Russell Greenwell and Carol Adamson Greenwell's
Motion for Partial Summary Judgment and for Substitution of Real
Parties in Interest, filed June 20, 2016" (**Order Granting Motion
for Partial Summary Judgment**) filed August 17, 2016; and (2)
"Order Granting Defendants Frank Russell Greenwell, also known as
F.R. Peter Greenwell, also known as Frank Russell Peter
Greenwell, Trustee of The F.R. Peter Greenwell Trust dated
October 23, 1989, as amended, and Carol Adamson Greenwell,
Trustee of The Carol Adamson Greenwell Trust, dated October 23,
1989, as amended's [sic] Motion for Attorneys' Fees and Costs"
(**Order Granting Motion for Attorneys' Fees and Costs**), filed
March 16, 2017.

This appeal addresses a land boundary disagreement
between brothers (and their wives, respectively) with regard to
property conveyed to each by their parents' trusts.

On appeal, Appellants contend the Circuit Court erred
by determining: (1) the boundary between the properties at issue
is correctly based on a survey map rather than the historic
ahupua'a boundary; (2) no genuine issue of material fact exists
as to the location and description of Appellees' property; (3)
Appellees are entitled to attorneys' fees and costs; (4) the
award of attorneys' fees and costs to Appellees was reasonable;
and (5) Appellees are the sole owners of the subject property.

We conclude the Circuit Court properly granted summary
judgment and properly awarded attorneys' fees and costs in favor
of Appellees.  We therefore affirm.

## I.  Background

### A.  Undisputed Facts and Evidence

On December 8, 1970, Robert Francis Greenwell (**Robert
F. Greenwell**), the father/father-in-law of Appellants and
Appellees, along with his brothers, James M. Greenwell and L.

---

[2]  The Honorable Melvin H. Fujino presided.

Radcliffe Greenwell (collectively, **the brothers**), established the Palani Land Trust II (**PLT II**) to which they agreed to transfer each of their one-third undivided interests in lands located in North Kona as well as other assets.

## 1. The Palani Land Trust II

Around March 1982, Robert F. Greenwell expressed his desire to withdraw his one-third undivided interest from PLT II. On May 31, 1984, after years of discussions failed to result in a satisfactory distribution of Robert F. Greenwell's interest in PLT II, he initiated a lawsuit against James M. Greenwell and L. Radcliffe Greenwell (**1984 Complaint** or **1984 Lawsuit**).

In October 1986, stemming from the 1984 Lawsuit, the brothers entered into a Letter of Mutual Understanding (**LMU**) in which they agreed to settle the dispute of property in PLT II by, *inter alia*, distributing certain parcels to Robert F. Greenwell based on approximate fair market value and acreage, "subject to change based upon actual survey and description." The LMU expressly states:

> 7. Procedures to Effect Final Settlement
> The parties agree that the following procedures are reasonably necessary to effect the final settlement:
> a. Survey of Parcels. It will be necessary for surveys to be made of some of the parcels to be distributed to Robert. The only parcels which will be surveyed are those that must be surveyed for subdivision purposes or to otherwise effect the distribution made pursuant to this final settlement. The parties agree that Haruo Shigeoka of the office of Towill, Shigeoka & Associates, Inc., Surveyors, shall be retained to conduct the surveys and monument the boundary locations.
> b. Description. The surveyor shall prepare metes and bounds descriptions of the parcels to be conveyed.

(Emphasis added). The LMU makes no reference that the ahupuaʻa line between Honokōhau 1st and Honokōhau 2nd would serve as the boundary between the Subject Property and TMK 7-4-006-006 for purposes of distribution to Robert F. Greenwell.

In accordance with the LMU, the brothers entered into a settlement agreement dated June 19, 1987 (**1987 Settlement Agreement**), by which Robert F. Greenwell received 476.454 acres. Of the parcels distributed to Robert F. Greenwell were TMKs 7-4-

006-006, consisting of 27.13 acres, and 7-4-002-011 (**Subject Property**), consisting of 26.107 acres. Pursuant to the 1987 Settlement Agreement, a deed was executed by L. Radcliffe Greenwell and James M. Greenwell as Grantors, and by Robert F. Greenwell as Grantee, with the deed expressly stating:

> This Deed is being delivered by the Grantors to the Grantee pursuant to that certain unrecorded Settlement Agreement, dated June 19, 1987 (the "Settlement Agreement"), executed by the Grantors and the Grantee for the purpose of effectuating the settlement and satisfaction of the Grantee's claim to a one-third interest in the Trust and the Trust property.

The property descriptions attached to the deed for both TMK 7-4-006-006 and the Subject Property state the properties are "bounded and described" per a survey conducted by Haruo Shigeoka (**Shigeoka Survey**), a registered professional land surveyor.

The 1987 Settlement Agreement provides in relevant part:

> WHEREAS, there presently exists a dispute between Robert on the one hand, and James and Radcliffe on the other hand as to the Trust and the distribution to Robert, which dispute includes a lawsuit described as <u>Robert F. Greenwell v. James M. Greenwell and L. Radcliffe Greenwell</u>, Civil No. 9764, Third Circuit Court (Kona), State of Hawaii (the "lawsuit"); and
> WHEREAS, on October 21, 1986, the parties hereto executed that certain <u>Letter of Mutual Understanding</u> in an effort to establish a procedure to arrive at a final settlement of the dispute and lawsuit, <u>which procedure included the survey of certain lands</u> and further mutual agreement as to other matters; and
> WHEREAS, <u>the parties have followed the terms of the Letter of Mutual Understanding</u> and now desire to resolve, compromise and settle the dispute and lawsuit on the terms and conditions provided herein;
> THEREFORE, in consideration of the promises, releases and covenants herein, the parties hereto agree to settle, resolve and compromise the dispute on the following terms and conditions:
> . . . .
> 8. The parties understand and agree that this is the final, binding and complete agreement among them to settle and resolve all matters and disputes involving in any way the Trust, the trust property, and the management of the Trust, and that this Agreement is the entire agreement of the parties and supersedes all other agreements as to the Trust, whether in writing or oral[.]
> . . . .
> [T]he parties recognize that several steps must be taken to effectuate this Settlement Agreement, and the parties agree to perform such acts and execute such documents as may be necessary to effectuate this Settlement Agreement. Specifically, but without limitation, the following steps will be taken:

> . . . .
> b. The surveyor shall also prepare parcel maps for the conveyed property, which maps will also indicate the easements both conveyed and retained.
>
> . . . .
> e. The conveyance shall be documented, which documents shall be prepared by the Trust (or its attorneys) and which shall or may include conveyance documents and amendment to the Trust, and <u>dismissal of the lawsuit</u>, it being specifically understood and agreed that no property shall be conveyed until all necessary steps are taken for all parcels such that all property to be conveyed to Robert shall be conveyed at the same time.
> 9. The parties further agree that this Agreement shall be binding on each of them, their respective successors, heirs, beneficiaries and assign.

(Emphases added). Nothing in the 1987 Settlement Agreement indicates the brothers intended for the ahupua'a line dividing Honokōhau 1st and 2nd to determine the boundary between the Subject Property and TMK 7-4-006-006 for purposes of distribution to Robert F. Greenwell.

Pursuant to the 1987 Settlement Agreement, the lawsuit initiated by the 1984 complaint was dismissed with prejudice.

**2. Conveyance of Land After 1987 Settlement Agreement**

After the distribution of land from PLT II to Robert F. Greenwell, he conveyed a one-half undivided interest in all lands from the 1987 Settlement Agreement to the Robert Francis Greenwell Revocable Living Trust and the Alice Emily Greenwell Revocable Living Trust (collectively, **Greenwell Trusts**). The Greenwell Trusts conveyed their respective one-half undivided interests in the Subject Property to Appellees, and their respective one-half undivided interests in TMK 7-4-006-006 to Appellants.

In 2002, Appellants conveyed TMK 7-4-006-006 to Pacific Rim and in 2003, Pacific Rim conveyed TMK 7-4-006-006 to HSA-UWC.

**3. The Current Dispute**

In 2001, Kelly sent a letter to Peter disputing the boundary between Honokōhau 1st and Honokōhau 2nd. Peter responded "there is <u>no</u> issue as to what the boundary is between

Honokohau [1st] and Honokohau [2nd]" and there is no issue "regarding the acreage and boundaries of [the Subject Property]."

**B.   Procedural History**

On November 8, 2013, Appellants filed their original complaint contending, among other things, the Shigeoka Survey improperly moved the historical ahupuaʻa boundary between Honokōhau 1st and Honokōhau 2nd further south and therefore the metes and bounds deed descriptions incorrectly increase the acreage of the Subject Property and decrease the acreage of TMK 7-4-006-006.  Appellants urge the boundary must be corrected to reflect the historical ahupuaʻa boundary, as established by physical evidence in the field and descriptions to original land commission awardees of land in Honokōhau 1st and 2nd.[3]

According to Appellants' theory, once the Honokōhau 1st and Honokōhau 2nd boundary is corrected to reflect the historical ahupuaʻa boundary, a 14 acre "remnant parcel" would result that should have been part of the original deed for TMK 7-4-006-006 from PLT II to Robert F. Greenwell and ultimately to Appellants. Approximately 4 acres of the alleged remnant parcel are derived from the 26.107 acres of the Subject Property belonging to Appellees.  Appellants claim that, although they have conveyed TMK 7-4-006-006 to other parties, they "reserved for themselves the rights of the Remnant Parcel."

In their First Amended Complaint, filed on January 9, 2015, Appellants allege that when the 1987 Settlement Agreement was entered into, "it was always understood that the [Subject] [P]roperty [and TMK 7-4-006-006 were] being divided along the ahupuaa [sic] lines between Honokohau 1st and Honokohau 2nd, which line is culturally and historically significant."

On June 20, 2016, Appellees filed their Motion for Partial Summary Judgment.  In support of their motion, Appellees

_____

[3]   In the lower court, Appellants also sued Palani Ranch Company, Inc., HSA-UWC, Guy C. Miranda and Jerrae A. Miranda and other unknown defendants, all owning land adjacent to the historic ahupuaʻa boundary and/or the Honokōhau 1st and Honokōhau 2nd boundary as described by the Shigeoka Survey. No other parties have made an appearance in this appeal.

submitted, *inter alia*, the 1984 Complaint, the LMU, the 1987 Settlement Agreement, the deed conveying to Robert F. Greenwell various lands from PLT II, and a declaration from David L. Fairbanks, who represented Robert F. Greenwell in the distribution of his interest from PLT II. In opposition to Appellees' motion, Appellants submitted a report conducted by their expert estimating the actual boundary between Honokōhau 1st and Honokōhau 2nd and two declarations from Kelly. In both of his declarations, Kelly asserts, "[a]t that time of the Settlement Agreement and thereafter, the settlors, trustees and beneficiaries of the Palani Land Trust II understood that the property held in the Palani Land Trust II was to be divided along the ahupua'a lines between Honokohau 1st and Honokohau 2nd."

On August 17, 2016, the Order Granting Motion for Partial Summary Judgment was filed, concluding Appellants were bound by the 1987 Settlement Agreement between the brothers "[that] was based upon surveys and maps prepared by surveyor Haruo Shigeoka[.]"[4]

On December 8, 2016, Appellees filed a Motion for Attorneys' Fees and Costs pursuant to Hawaii Revised Statutes (**HRS**) § 607-9 (2016) (costs statute), HRS § 607-14 (2016) (assumpsit statute), and Hawai'i Rules of Civil Procedure (**HRCP**) Rule 54(d) (costs to prevailing party). Appellees argued that

---

[4] On January 3, 2017, the Circuit Court filed a "Stipulated Order Granting Partition in Kind and Establishing Boundaries of the Subject Properties" (**Stipulated Order**) between Appellants and other owners of property adjacent to TMK 7-4-006-006 or TMK 7-4-006-011, also owned by Appellants. With regard to claims against Appellees, the Stipulated Order concluded:

> 7. This stipulation by Plaintiffs and the disclaimer filed by Defendants Greenwell as to the location of the K. Greenwell Kuleana, Miranda Kuleana, Remnant Parcel, Palani Parcel and HSA Parcel, and the resulting boundaries of said properties, <u>does not result in Plaintiffs or Defendants Greenwell admitting or conceding any other fact or argument as to the previously entered summary judgment in favor of Defendants Greenwell and against Plaintiffs</u>, by the August 17, 2016 Order Granting Defendants Frank Russell Greenwell and Carol Adamson Greenwell's Motion for Partial Summary Judgment and for Substitution of Real Parties in Interest, filed June 20, 2016 (the "August Greenwell Order").

(Emphasis added).

because Appellants based their First Amended Complaint on the 1987 Settlement Agreement and prayed for attorneys' fees and costs, their claim was in the nature of assumpsit, entitling Appellees to attorneys' fees as the prevailing party. Additionally, Appellees argued they were entitled to costs pursuant to HRS § 607-9 and HRCP Rule 54(d)(1). In opposition, Appellants argued their claims were not in the nature of assumpsit but instead sought declaratory judgment. Appellants further argued Appellees' request for attorneys' fees and costs was unreasonable.

On March 16, 2017, the Circuit Court issued its order granting attorneys' fees and costs to Appellees in the amount of $65,504.

## II. Standards of Review

### A. Summary Judgment

The grant or denial of summary judgment is reviewed *de novo*. Nozawa v. Operating Eng'rs Local Union No. 3, 142 Hawaiʻi 331, 338, 418 P.3d 1187, 1194 (2018) (citing Adams v. CDM Media USA, Inc., 135 Hawaiʻi 1, 12, 346 P.3d 70, 81 (2015)). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id. at 342, 418 P.3d at 1198 (brackets omitted) (quoting Adams, 135 Hawaiʻi at 12, 346 P.3d at 81)). "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." Id. (quoting Adams, 135 Hawaiʻi at 12, 346 P.3d at 81)).

"The burden is on the moving party to establish that summary judgment is proper." Id. (citing French v. Haw. Pizza Hut, Inc., 105 Hawaiʻi 462, 470, 99 P.3d 1046, 1054 (2004)). "Once a summary judgment movant has satisfied its initial burden of producing support for its claim that there is no genuine issue of material fact, the party opposing summary judgment must

8

demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial." Id. (internal quotation marks, brackets, and citation omitted). "[W]e must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion." Ralston v. Yim, 129 Hawai'i 46, 56, 292 P.3d 1276, 1286 (2013) (citation omitted).

B. Award of Attorneys' Fees and Costs

"The trial court's grant or denial of attorney's fees and costs is reviewed under the abuse of discretion standard." Sierra Club v. Dep't of Transp., 120 Hawai'i 181, 197, 202 P.3d 1226, 1242 (2009) (internal quotation marks, citations, and brackets omitted). "An abuse of discretion occurs when the circuit court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Pulawa v. GTE Hawaiian Tel, 112 Hawai'i 3, 10-11, 143 P.3d 1205, 1212-13 (2006) (internal quotation marks, citations, and brackets omitted).

III. Discussion

A. Appellants' Claims Against Appellees are Barred By Res Judicata

Appellants' claims against Appellees stem from their contention that under the 1987 Settlement Agreement, property distributed to Robert F. Greenwell was supposed to be divided along the ahupua'a lines between Honokōhau 1st and Honokōhau 2nd, and that the parties never agreed to move the ahupua'a boundary. Thus, Appellants contend the metes and bounds description in the Subject Property deed cannot be supported as to the portion located outside of the historical ahupua'a boundary. To the contrary, Appellees argue the litigation between the brothers initiated by the 1984 Complaint, which culminated in the 1987 Settlement Agreement, prevents re-litigation of settled property boundaries.

1. Claim Preclusion

We agree with Appellees that Appellants are bound by the 1987 Settlement Agreement, which resolved the litigation

9

initiated by Robert F. Greenwell, who filed the 1984 Complaint against his brothers James M. Greenwell and L. Radcliffe Greenwell. The 1984 Complaint alleged two counts: first, that pursuant to the terms of the PLT II trust, Robert F. Greenwell was entitled to withdraw his undivided one-third interest in the lands of PLT II and receive a distribution of his one-third interest; and second, for the court to intervene to insure he received a just and fair distribution. In resolving these claims, the parties needed to determine the specific parcels held by PLT II that would be distributed to Robert F. Greenwell and the value of those parcels. These issues were resolved by way of the 1987 Settlement Agreement, which specified distribution of property to Robert F. Greenwell and specified that Towill, Shigeoka & Associates, Inc. would prepare parcel maps for the conveyed property and undertake necessary subdivisions of the parcels. The litigation initiated by the 1984 Complaint was dismissed pursuant to the 1987 Settlement Agreement.

"Res judicata, or claim preclusion, . . . limit[s] a litigant to one opportunity to litigate aspects of the case to prevent inconsistent results and multiplicity of suits and to promote finality and judicial economy." Bremer v. Weeks, 104 Hawai'i 43, 53, 85 P.3d 150, 160 (2004) (citation omitted).

> Claim preclusion . . . "prohibits a party from relitigating a previously adjudicated cause of action." [citing Dorrance v. Lee, 90 Hawai'i 143, 148, 976 P.2d 904, 909 (1999))]. Moreover,
>
> > [t]he judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter, and precludes the relitigation, not only of the issues which were actually litigated in the first action, but also of all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided.
>
> Foytik v. Chandler, 88 Hawai'i 307, 314, 966 P.2d 619, 626 (1998) (quoting Morneau v. Stark Enters., Ltd., 56 Haw. 420, 422-23, 539 P.2d 472, 474-75 (1975))[]. The party asserting claim preclusion has the burden of establishing that (1) there was a final judgment on the merits, (2) both parties are the same or in privity with the parties in the original suit, and (3) the claim decided in the original suit is identical with the one presented in the action in question.

Bremer, 104 Hawai'i at 53-54, 85 P.3d at 160-61 (emphasis added).

Here, the first element for res judicata is met because the 1987 Settlement Agreement resulted in the 1984 Lawsuit being dismissed with prejudice, which was a final judgment on the merits. See In re Dowsett Trust, 7 Haw. App. 640, 645, 791 P.2d 398, 402 (1990) ("[A] 'stipulation of dismissal with prejudice constitutes a final judgment on the merits for the purpose of res judicata (claim preclusion)[.]'") (quoting Sullivan v. Easco Corp., 662 F. Supp. 1396, 1408 (D. Md. 1987)).

The second element is satisfied because Appellants are in privity with Robert F. Greenwell. To determine privity, this Court has considered the "relationship between the one who is a party of record and another [] close enough to include that other within the res adjudicata." Id. at 646, 791 P.2d at 402 (internal quotation marks and citation omitted). Relating to property conveyance, "a grantee is in privity with his grantor[.]" Tibbetts v. Damon, 17 Haw. 203, 205 (Haw. Terr. 1905); see also 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4462 (2nd ed. 2002) ("Ordinarily, a judgment is binding on a nonparty who took by transfer from a party after judgment[.]"). Because Appellants were granted TMK (3) 7-4-006-006 from Robert F. Greenwell, who was a party to the 1987 Settlement Agreement, Appellants are in privity with him as grantee.

Lastly, the third element is satisfied. Appellants argue they are not re-litigating any claims because the 1984 Complaint did not seek to determine the boundary between Honokōhau 1st and Honokōhau 2nd. Moreover, they contend all parties to the 1987 Settlement Agreement did not know the Shigeoka Survey described the Honokōhau 1st and Honokōhau 2nd boundary differently than the historical ahupua'a boundary because only survey experts could understand the description. Appellees, however, argue the claim in dispute is the "proper one-third division and boundaries of the former Palani Trust lands" and the "settling parties expressly relied upon the Shigeoka maps and surveys and their specific metes and bounds[.]"

(Emphasis omitted). Thus, "property boundaries, including TMK No. (3) 7-4-002-011 containing 26.107 acres, were previous [sic] agreed and settled upon, and cannot be redetermined in a second lawsuit."

The record contains ample evidence that Robert F. Greenwell and his brothers intended to rely on the metes and bounds survey conducted by Haruo Shigeoka, and there is no evidence of an intent to rely on any historic ahupua'a boundary in distributing Robert F. Greenwell's share of PLT II. For one, the LMU, which outlined what would effectively become the 1987 Settlement Agreement, states in relevant part that "[t]he parties agree that Haruo Shigeoka of the office of Towill, Shigeoka & Associates, Inc., Surveyors, shall be retained to conduct the surveys and monument the boundary locations." The LMU also states "[t]he surveyor shall prepare metes and bounds descriptions of the parcels to be conveyed." Further, the 1987 Settlement Agreement specifically states the parties executed the LMU "in an effort to establish a procedure to arrive at a final settlement of the dispute and lawsuit" and that "the parties have followed the terms of the [LMU.]" Nothing in the LMU or 1987 Settlement Agreement expresses an intention for any of the parcels to be described by historic ahupua'a location.[5] Moreover, attorney David L. Fairbanks, who represented Robert F. Greenwell in the settlement process of the 1984 Lawsuit, submitted a declaration attesting:

> 7. For the purposes of the settlement process, the brothers also agreed to use and rely upon surveyor Haruo

---

[5] Appellant Kelly's statement in his declarations that PLT II was intended to be divided along the ahupua'a lines between Honokōhau 1st and 2nd is not based on personal knowledge and therefore unavailing. HRCP Rule 56(e) provides in relevant part "[s]upporting and opposing affidavits shall be made on personal knowledge [and] shall set forth such facts as would be admissible in evidence[.]" HRCP Rule 56(e) (2000). Kelly declared "[a]t that time of the [1987] Settlement Agreement and thereafter, the settlors, trustees and beneficiaries of the Palani Land Trust II understood that the property held in the Palani Land Trust II was to be divided along the ahupua'a lines between Honokohau 1st and Honokohau 2nd." He fails to set forth, however, any basis for him to have personal knowledge supporting this statement. Therefore, we do not consider his statement. See Adams v. CDM Media USA, Inc., 135 Hawai'i 1, 31, 346 P.3d 70, 100 (2015), as corrected (Mar. 11, 2015) (affiant's statement deemed inadmissible evidence under HRCP Rule 56(e) for lack of personal knowledge).

Shigeoka ("Shigeoka") and his surveys and maps of the Trust's properties (the "Shigeoka Maps"), to determine the extent of the Trust's properties and the precise boundaries and acreages of those properties.

8. As part of the Trust valuation process, the three brothers also agreed to use and rely upon for the settlement process, appraisals of the Trust's properties prepared by John Child & Company, Inc. ("Child"). In Child's appraisal of the Trust's properties, many of the acreages that Child assigned to the various properties were taken from the Shigeoka Maps and Shigeoka's determination as to the exact acreages and boundaries of the Trust's properties.

Considering the admissible evidence, no genuine issue of material fact exists that the metes and bounds description established by the Shigeoka Survey was to be relied upon to settle the property distribution of PLT II. The claim in this case is identical to claims and issues settled by the 1987 Settlement Agreement, that is the boundaries of property distributed to Robert F. Greenwell from PLT II. Accordingly, Appellants are precluded from re-litigating the boundary of the Subject Property.

## 2. Appellants' Other Arguments

Appellants also argue the Circuit Court erred in determining no genuine issue of material fact existed as to the location and description of the Subject Property and that Appellees are the exclusive owners of the Subject Property, given the Shigeoka Survey incorrectly described the Subject Property as outside of Honokōhau 1st. These issues, however, are covered by the res judicata analysis because they are essentially based on a dispute over the boundary of the Subject Property, which was conclusively determined in the 1987 Settlement Agreement according to the Shigeoka Survey.

## B. Attorneys' Fees and Costs

Appellants argue the Circuit Court erred in awarding attorneys' fees to Appellees because Appellants' claims were not in the nature of assumpsit, but rather were for declaratory relief based on HRS Chapter 632 (declaratory judgment statute) and HRS Chapter 668 (partition actions). Appellants assert that references to the 1987 Settlement Agreement in the First Amended Complaint were for "historical context." Appellees, however, maintain they are entitled to reasonable attorneys' fees because

13

Appellants' claims are for "declaratory relief and for monetary damages based upon rights allegedly arising out of the 1987 Settlement Agreement [] in the nature of assumpsit." We affirm the Circuit Court's award of attorneys' fees to Appellees.

HRS § 607-14 provides for an award of attorneys' fees to the prevailing party for actions in the nature of assumpsit.[6] "Assumpsit is a common law form of action which allows for the recovery of damages for the non-performance of a contract, either express or implied, written or verbal, as well as quasi contractual obligations." Schulz v. Honsador, Inc., 67 Haw. 433, 435, 690 P.2d 279, 281 (1984) (citation omitted). "The character of the action should be determined from the facts and issues raised in the complaint, the nature of the entire grievance, and the relief sought." Leslie v. Est. of Tavares, 93 Hawai'i 1, 6, 994 P.2d 1047, 1052 (2000) (citation omitted). Declaratory action claims may sound in the nature of assumpsit where the relief sought and award of attorneys' fees and costs requested is premised on rights flowing from a contract. See Ranger Ins. Co. v. Hinshaw, 103 Hawai'i 26, 33-34, 79 P.3d 119, 126-27 (2003), as

---

[6] HRS § 607-14 states in relevant part:

**§607-14 Attorneys' fees in actions in the nature of assumpsit, etc.** In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.

. . . .

The above fees provided for by this section shall be assessed on the amount of the judgment exclusive of costs and all attorneys' fees obtained by the plaintiff, and upon the amount sued for if the defendant obtains judgment.

amended (Dec. 18, 2003) (holding declaratory action by liability insurer also claiming attorneys' fees and costs against insured for defending insured in a separate action allegedly not covered by policy was request for consequential damages in the nature of assumpsit); cf. Leslie, 93 Hawai'i at 7, 994 P.2d at 1053 (action in nature of assumpsit when factually implicating contract rather than basing recovery of money damages on it).

Here, although Appellants' First Amended Complaint facially alleges that it seeks declaratory relief to settle the boundary between the Subject Property and TMK 7-4-006-006 pursuant to HRS Chapter 632, as well as a partition of the Subject Property pursuant to HRS Chapter 668, the crux of Appellants' claims against Appellees flows from challenging the intent of the parties to the 1987 Settlement Agreement: "[a]t that time and thereafter [regarding the 1987 Settlement Agreement], it was always understood that the [Subject] [P]operty was being divided along the ahupuaa [sic] lines between Honokohau 1st and Honokohau 2nd[.]" Essentially, Appellants asked the Circuit Court to enforce their interpretation of the 1987 Settlement Agreement, which is undisputedly a contract agreed to by the brothers, rather than the boundary determined in the Shigeoka Survey. But for such an assertion, Appellants have no grounds on which to base their claims. Further, besides factually relying on their interpretation of the 1987 Settlement Agreement, Appellants sought consequential damages based on their dispute of the intent of the parties to that contract. Therefore, the Circuit Court did not abuse its discretion by awarding attorneys' fees to Appellees pursuant to HRS § 607-14.

Appellants also claim the amount of the attorneys' fees award was unreasonable. However, based on our review of the record and arguments of the parties, the Circuit Court did not abuse its discretion in the amount it awarded to Appellees.

Finally, although Appellants apparently also challenge the costs awarded to Appellees, they make no discernable argument that the Circuit Court lacked authority to make its award of costs. Further, we conclude the Circuit Court did not abuse its

discretion in the amount of costs awarded to Appellees. We therefore do not disturb the costs award either.

### IV. Conclusion

For the foregoing reasons, we affirm the Final Judgment entered by the Circuit Court of the Third Circuit on September 11, 2017.

DATED: Honolulu, Hawaiʻi, November 26, 2021.

On the briefs:

Robert D. Triantos,
Michelle Chi Dickinson,
for Plaintiffs-Appellants.

Charles A. Price,
for CAROL ADAMSON GREENWELL,
Successor Trustee of the F.R.
Peter Greenwell Trust, dated
October 23, 1989, as amended;
CAROL ADAMSON GREENWELL,
Trustee of the Carol Adamson
Greenwell Trust, dated October
23, 1989, as amended.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge